**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**REGINALD BURKS,**

    **Plaintiff,**

**vs.**                                              **CASE NO. 4:04CV404-SPM/AK**

**MICHAEL LORD, et al,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this cause of action pursuant to 42 U.S.C. §1983 alleging that Defendants Michael Lord and Martie Taylor were deliberately indifferent to his serious medical needs. (Doc. 1). Defendants have both filed special reports, which have been construed as motions for summary judgment (docs. 26, 27, 28, 29), and Defendant Taylor has moved to dismiss one claim on grounds of failure to exhaust administrative remedies. (Doc. 25). Plaintiff has responded. (Docs. 30 and 32).

**I.    Allegations of the complaint (doc. 1)**

Plaintiff claims that Defendant Lord did not order surgery for his right hip problems even though another doctor had examined an x-ray upon Plaintiff's arrival at the institution and referred him to Defendant Lord for a surgical consultation. Plaintiff claims that Defendant Lord suggested orthopedic shoes instead, and the failure to order surgery has caused Plaintiff considerable pain and disability. Plaintiff also claims that

Defendant Taylor would not authorize a wheelchair for him. Plaintiff claims that he does not have a right hip and cannot walk without crutches, and he has been in physical discomfort and mental anguish because of the Defendants deliberate indifference to his medical needs.

As relief, Plaintiff wants a second opinion from an orthopedic doctor and compensatory and punitive damages.

Plaintiff has attached grievances to his complaint.

On March 26, 2002, Plaintiff filed a Request for Accommodation to the Warden at Holmes Correctional Institution complaining about pain in right hip area and requesting an orthopedic prosthesis and wheelchair.[1] The request was denied because Dr. Lord had concluded no surgery was warranted and Plaintiff had been referred to Orthotics for shoes. A memorandum from Defendant Martie Taylor to Warden Taylor concurred with the warden's denial.

An Emergency Grievance dated June 23, 2002, requests surgery and complains of continued pain and disability. The response is that he had been referred to and evaluated by an orthopedic surgeon and evaluated by the brace clinic and given special shoes, which were all his condition required.

Inmate Request (Formal Grievance) dated March 1, 2003, requests a second opinion about surgery and expresses Plaintiff's disagreement with the assessments of Drs. Andem and Lord. The response dated March 12, 2003, referred him to the

---

[1] This is not a grievance form. It is an ADA Request form seeking a specific modification to participate in a "service, activity or program." No service, activity or program is identified on the form.

**No. 4:04cv404-spm/ak**

previous informal and formal grievances on the issue and states that no new information was provided about his condition.

Inmate Request (Formal Grievance) dated March 17, 2003, complains that he is suffering from his painful right hip and wants medical relief. He refers also to the need for a hip prosthesis or other accommodation. The response dated April 28, 2003, states that specialty consults were up to the Chief Health Officer.

## II. Defendant Taylor's Motion to Dismiss (doc. 25)

Defendant Taylor contends that Plaintiff did not grieve the issue of his wheelchair and his request for accommodation, which Warden Taylor and Defendant Martie Taylor denied, should have then been asserted in the form of a grievance and ultimately appealed to the Secretary for it to have been fully exhausted.

a)  <u>Defendant Taylor's Rule 56(e) evidence</u>

Defendant Taylor attached the grievances which are the same as those attached to Plaintiff's complaint and none of them raise any issues with her or her denial of his request for a wheelchair. These are the only grievances regarding Plaintiff's medical complaints according to the affidavit of Katherine Shepherd, Administrative Assistant, Bureau of Inmate Grievance Appeals.

b)  <u>Plaintiff's response (doc. 30)</u>

Plaintiff argues that Defendant Taylor was indifferent to his medical needs and failed to adhere to the ADA, but the grievances he has attached to his response are duplicative of those attached to his complaint and to Defendant Taylor's motion and do

**No. 4:04cv404-spm/ak**

not refute her contention that he did not grieve her denial of his request for a wheelchair.

Plaintiff has attached copies of a sick call request dated August 5, 2002, and pain medication orders dated March 2002 through December 2002.

An affidavit of Inmate Terrance Wimberly states that he saw Plaintiff fall down in the shower, and he now gets Plaintiff his meal tray and makes up his bed.

Plaintiff has also filed his Declaration wherein he contends that there are disputed issues of fact, which precludes summary judgment.

### III.   Analysis of Exhaustion Issue

It is clear that Plaintiff has not exhausted his claims against Defendant Martie Taylor for denying him a wheelchair.  Since there was clearly a grievance procedure in place and it is mandatory, these claims must be dismissed.  See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); Alexander v. Hawk, 159 F.3d 1321, 1326 (11th Cir. 1998) (requirement is mandatory and may not be waived).

### IV.   Defendant's Martie Taylor's Motion for Summary Judgment (doc. 26)

Defendant Taylor denies liability, insofar as Plaintiff has asserted any under 42 U.S.C. §1983 for deliberate indifference to his medical needs, because she is not any type of medical personnel and was not responsible for any decisions regarding his medical care.  She is the ADA Coordinator for the DOC.  She has attached copies of his

**No. 4:04cv404-spm/ak**

medical records which do not show her involved in any way in any of the decisions regarding treatment for his hip problem.  The undersigned agrees that Defendant Taylor cannot be held liable for any indifference to Plaintiff's medical needs, Plaintiff has not alleged any personal involvement by her in any decisions made with regard to his medical treatment, and this claim against her is dismissed.

Insofar as Plaintiff may have asserted claims against her for discriminating against him under the Americans with Disabilities Act, 42 U.S.C. §12132, Defendant Taylor is correct that he has failed to state a claim under the ADA.  Under the ADA, public entities may not discriminate against or exclude by reason of a disability any qualified individual with a disability from participating in or receiving benefits of services, programs, or activities of the public entity.  42 U.S.C. §12132.  Assuming for purposes of this analysis that Plaintiff has a disability, he has identified no services, programs or activities that he is being denied because of his hip problem, the entire crux of his complaint is that he should be given surgery to reduce his hip pain.  As stated supra, Defendant Taylor is not involved in the decision to deny him surgery, and she has not denied him any services, programs, or activities.  The ADA does not provide for a private right of damages and the injunctive relief sought, a second opinion by an orthopedic surgeon, would not be relief afforded under this statute, nor does the ADA provide for individual liability.  Thus, these claims, too, must be denied.

Plaintiff has not responded to this motion.

**V.     Defendant Michael Lord's Motion for Summary Judgment (doc. 28)**

**No. 4:04cv404-spm/ak**

Defendant argues that Plaintiff's hip condition is not a serious medical need based on his assessment that the hip surgery, called a girdle stone, that was performed prior to Plaintiff coming into the prison system was successful and had no swelling or inflammation. These operations typically result in one leg being shorter than the other and sometimes require a cane or crutch to assist in ambulation. He even noted that upon examination on April 20, 2004, Plaintiff reported that his hip only occasionally bothered him.

Defendant Lord also argues that he was not deliberately indifferent to any medical need, he merely did not believe that additional surgery was appropriate given Plaintiff's propensity for infection (Plaintiff has lupus, an immune system suppressing illness), and that Plaintiff simply disagrees with his recommendations, which does not state a claim for deliberate indifference.

a)      Defendant's Rule 56(e) evidence

Medical records show that Plaintiff re-entered the Florida prison system on December 11, 2001, when he violated parole. (Exhibit A). On December 12, 2001, the *day* after he was re-incarcerated, he was examined and referred for an orthopedic consultation on an "urgent" basis. (Exhibit B1). Plaintiff had hip surgery and the right hip joint was removed in July 2001 because of osteomyelitis resulting in his right leg being 2 inches shorter than the left leg and unable to bear weight. (Exhibit B1). Dr. Lord explained that osteomyelitis is an inflammation of the bone and marrow caused by a bacterial infection and marked by death and separation of tissue. (Exhibit D). A Girdlestone procedure was performed on Plaintiff prior to his entering the system which

**No. 4:04cv404-spm/ak**

is the removal of the femur head and neck.  (Exhibit D).  A fibrous joint forms between the acetabulum (the cup based cavity at the base of the hip bone) and the femoral shaft, which "provides for pain relief and good stability at a cost of reduced mobility and may even lead to an uneven gait."  (Exhibit D).

Dr. Lord examined him on December 17, 2001, and referred him for shoes with a lift noting that surgery was not warranted.  (Exhibit B2-3).  He received shoes with an inch and a half lift, which he wore out of the clinic, and had passes for crutches, low bunk, no prolonged standing, no sports, and no work.  (Exhibit B8).  Dr. Lord attests in his affidavit that he did not advise surgery for hip replacement because Plaintiff was a high risk for infection because of a suppressed immune system caused by lupus.  (Exhibit D).  Upon his initial examination, Plaintiff's white blood cell count was already low (2500) and continued to drop with it being 1000 at a recent examination on March 19, 2005.  (Id).  Dr. Lord was of the opinion that if Plaintiff got an infection after hip replacement the hip prosthesis would have to be removed, as well as additional bone, and Plaintiff's leg discrepancy would be even greater.  (Id).  Dr. Lord believed that Plaintiff's lupus was probably the cause of his initial hip infection and that his continued immune system problems would be too high a risk for surgery.  (Id).  Also, Dr. Lord was of the opinion that a shoe lift and crutches would be better for Plaintiff than a wheelchair because it was his opinion that ambulation would prevent future muscle loss and bone softening that might occur if he was completely confined to a wheelchair.

Defendant Lord's assessment was reviewed by Dr. Daniel Cherry, the Director of Health Services for DOC, and he reviewed Plaintiff's medical records and was of the

**No. 4:04cv404-spm/ak**

opinion that Plaintiff had received appropriate passes so that he would not have to strain his hip and appropriate anti-inflammatory pain medication. (Exhibit C). Dr. Cherry noted that there was nothing in the record to support Plaintiff's contention that he was so unable to ambulate that he needed a wheelchair. Dr. Cherry noted that Dr. Andem at Holmes Correctional Institution had also denied Plaintiff's request for surgery and a wheelchair.

    b)    Plaintiff's response (doc. 32)

Plaintiff argues that Defendant Lord did not adequately examine him or ask necessary questions about his condition or explain why he ignored the opinion of the first physician who examined him that he needed surgery. Plaintiff's points out on the consultation request that his need was marked "urgent" and a pair of shoes cannot be considered urgent. Also, Plaintiff complains that Dr. Lord did not explain why he did not recommend surgery on his consultation report nor did he explain his reasons to the Plaintiff. Plaintiff also disagrees with Defendant Lord's recitation of his medical history claiming that his initial hip surgery was in June 2000 not July 2001. This error, Plaintiff claims, shows that Defendant Lord did not have his medical records when he made the decision not to perform surgery.

    c)    Additional medical evidence

Records from Tallahassee Memorial Hospital show that Plaintiff had the right femoral head removed "in order to allow the later placement of a hip prosthesis to allow him to be able to ambulate." (Doc. 32, Exhibit C). The report shows that the operation was performed on June 19, 2000, and that he had "a severe problem with septic arthritis

**No. 4:04cv404-spm/ak**

of the left shoulder, right hip, systemic lupus erythematosus, chronic malnutrition and other severe health problems."

    d)    <u>Declaration of Plaintiff</u>

Plaintiff claims that the surgeon, who initially performed the hip surgery, and Dr. Morales, who examined him at North Florida Reception Center, intended that he have surgery and Defendant Lord's decision against it has caused him more pain in that he has fallen down several times and has to have other inmates carry his meal trays, clean his room, and make his bed. Plaintiff also claims that his no work pass has resulted in him only being able to earn six days a month gain time rather than 22 days a month.

## VI. Analysis of Deliberate Indifference Claim

Medical claims under the Eighth Amendment have an objective and subjective component, each of which additionally is considered to encompass two subsidiary requirements. <u>Taylor v. Adams</u>, 221 F.3d 1254, 1258 (11th Cir. 2000), <u>cert</u>. <u>denied</u>, 531 U.S. 1077, 121 S.Ct. 774, 147 L.Ed.2d 673 (2001). The "objective component" of the Eighth Amendment standard requires a determination whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 303, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991). This objective component varies with the situation and the conduct in question and is responsive to "contemporary standards of decency." <u>Estelle v. Gamble</u>, 429 U.S. 97, 103, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); <u>see</u> <u>also</u> <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). An objectively serious deprivation requires (1) showing an objectively "serious medical need." <u>Estelle</u>, 429 U.S.

**No. 4:04cv404-spm/ak**

at 104. A serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). In addition, an objectively serious deprivation requires (2) showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain" and not simply "negligen[ce] in diagnosi[s] or treat[ment]," or even "[m]edical malpractice" actionable under state law. Estelle, 429 U.S. at 105-06 (internal quotation marks omitted). See Taylor, 221 F.3d at 1257; see also Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

A serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow, at 1243, quoting Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1994).

To show the required subjective intent to punish the plaintiff must demonstrate that the defendant acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. This is defined as requiring (1) an "aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists" and (2) the actual "draw[ing of] the inference." Farmer, 511 U.S. at 837. In sum, in a claim of denial of medical attention under the Eighth Amendment "[u]ltimately, there are [] four requirements: an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor, 221 F.3d at 1258.

**No. 4:04cv404-spm/ak**

The Court disagrees with Defendant Lord that Plaintiff's condition does not constitute a serious medical need. Any condition that resulted in a 2 inch discrepancy in leg lengths and causes a person to use two crutches to ambulate is "one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow, at 1243, quoting Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1994).

However, the arguments of Plaintiff are entirely based on his opinion that he should have surgery, *i.e.* he disagrees with the course of his treatment not that Defendant Lord has ignored the need for medical treatment, and this does not state a claim for relief. See Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (differences in opinion between medical staff and inmate do not state Eighth Amendment claim). Based on Defendant Lord's affidavit he appropriately considered Plaintiff's conditions, his hip problems and his lupus, and was following his white blood cell count, which was apparently not improving. His explanation for why Plaintiff was not a surgical candidate for hip replacement is fully supported by the record and by the Director of Health Services and another physician, Dr. Andem.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant Martie Taylor's Motion to Dismiss (doc. 25) be **GRANTED**, and Plaintiff's claims against her for denying him a wheelchair be **DISMISSED** for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e). It also **RECOMMENDED** that Defendant Taylor's Motion for Summary Judgment (doc. 26) and Defendant Lord's Motion for Summary

**No. 4:04cv404-spm/ak**

Judgment (doc. 28) be **GRANTED** for failure to state a claim upon which relief may be granted and that this cause should be dismissed.

**IN CHAMBERS** at Gainesville, Florida, this **26**<sup>th</sup> day of May, 2006.


        **s/ A. KORNBLUM**
        **ALLAN KORNBLUM**
        **UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 4:04cv404-spm/ak**